# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STELLA ROOKS,

    Plaintiff,

vs.

                                                                                 No. CIV 98-1300 LH/JHG

YOUTH DEVELOPMENT, INC.,
a New Mexico Corporation,
RUDY CHAVEZ, DONNA MARTINEZ,
and JOHN MELENDEZ,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss (Docket No. 13), filed January 29, 1999. The Court, having considered the pleadings submitted by the parties, and otherwise being fully advised, finds that the Motion to Dismiss is well taken in part and will be **granted in part and denied in part**.

### INTRODUCTION

Plaintiff Stella Rooks has filed suit seeking damages for sexual harassment, disability discrimination, intentional infliction of emotional distress, and assault at the hands of her former employer, Youth Development, Inc., and three employees at that company. She seeks compensation for these alleged injuries pursuant to Title VII, the Americans with Disabilities Act, and the New Mexico Human Rights Act.

Plaintiff alleges that she was sexually harassed by Defendants over an extended period of time and that, when she threatened to complain or did in fact complain to the EEOC, she was retaliated against. The alleged retaliation included being required to answer the telephone, a function which she claims causes her great stress. Plaintiff also claims this action violated the ADA, as she alleges her associated stress constitutes a disability.

Defendants assert that the ADA disability discrimination claim (Count II) should be dismissed because Plaintiff failed to file a timely charge for this claim with the EEOC. Defendants also assert that this claim and the NMHRA claim (Count III) should be dismissed, arguing that Plaintiff has not alleged a limitation which meets the ADA's or NMHRA's definition of a disability. Finally, Defendants assert that Plaintiff's retaliation claim in Count I should be dismissed, arguing that the alleged adverse employment action took place before the alleged protected activity, and thus there could be no causal connection between the two.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES ON ADA AND NMHRA CLAIMS

Defendants argue that Plaintiff failed to file a timely charge of disability discrimination with the EEOC, an ADA prerequisite, prior to commencing this civil action. *See* 42 U.S.C. §2000e-5(e)(1); *see also Knopp v. Magaw,* 9 F.3d 1478, 1479 (10th Cir. 1993). In Plaintiff's first EEOC charge, filed April 7, 1998, there is no mention of disability discrimination in the text and the disability box in the "cause of discrimination" section is not checked. (*See* Pl.'s Resp. Mot. Dis. Ex. A.) Plaintiff filed a second EEOC charge on September 15, 1998. Again, the charge did not mention disability discrimination in the text, and the disability box is not checked. (*See* Pl.'s Resp. Mot. Dis. Ex. C.) Plaintiff received the "Notice of Right to Sue" for this second EEOC charge on September 22, four days after her Complaint was filed in this Court. (*See* Pl.'s Resp. Mot. Dis. Ex. D.)

Finally, on October 21, 1998, Plaintiff filed a third charge with the EEOC, more than a month after filing the instant Complaint. In the October charge Plaintiff does check the disability box in the cause of discrimination section, and the text does state that Plaintiff was discriminated against because of her alleged disability. (*See* Pl.'s Resp. Mot. Dis. Ex. E.) Plaintiff received the Notice of Right to Sue for this final charge, completing the exhaustion of administrative prerequisites, on October 28, some forty days after filing her civil Complaint in this Court. (*See* Pl.'s Resp. Mot. Dis. Ex. F.)

Defendants correctly assert that Plaintiff's first EEOC charge was the only one filed and completed in a timely fashion; that is, for which she received the right to sue before filing the civil Complaint. An employee must comply with the ADA's administrative prerequisites prior to commencing an action in federal court against her employer for violation of the ADA. *See* 42 U.S.C. §12117(a); *see also Knopp,* 9 F.3d at 1479. Plaintiff did not comply with the ADA's administrative prerequisites for either the second or third EEOC charge because the notice of right to sue for each was received after she filed her Complaint.

Defendants also correctly assert that this first charge includes no mention of disability discrimination. The allegations of a civil complaint in a Title VII action must be related to the claims included in the previously filed EEOC charge. *See Cheek v. Western & Southern Life Insurance Co.,* 31 F.3d 497, 500 (7th Cir. 1994). In *Cheek*, the court held that even though the plaintiff checked the "sex discrimination" box on her EEOC charge form, her civil complaint alleging sex discrimination was not sufficiently related to her EEOC charge. *Id*. The court explained that "a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination . . . . [The two forms] must, at a minimum, describe the same conduct and implicate the same individuals." *Id.; see also*

*Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47 (1974). Plaintiff's claim of disability discrimination in the Complaint is unrelated to the claims set forth in the first EEOC charge, the only such charge filed in a timely fashion. Because Plaintiff has failed to meet the ADA jurisdictional prerequisite of exhausting the available administrative remedies for the alleged disability discrimination, the Court must grant Defendants' Motion to Dismiss Count II.

Although Defendants do not mention Rule 12(b)(1) in their motion to dismiss the NMHRA claim, as the New Mexico act requires its own administrative process the jurisdictional challenge applies to Count III as well. In its recent opinion in *Mitchell-Carr v. McLendon,* the New Mexico Supreme Court held that a suit cannot be brought to the trial court for NMHRA violations unless and until the plaintiff exhausts the available administrative remedies. 1999 WL 323005 at *3. While the court recognized that filing an EEOC complaint does satisfy the state requirement of filing an initial complaint with the New Mexico Human Rights Division, Chief Justice Minzner held that "receiving a notice of right to sue from the EEOC does not satisfy the state law requirement of obtaining an order [of non-determination] from the Division." *Id.* Plaintiff has failed to obtain an order from the division, and thus has failed to exhaust the administrative remedies available under the NMHRA. Accordingly, the Court must also dismiss Count III for lack of subject matter jurisdiction.

### **CLAIMS FOR DISABILITY DISCRIMINATION IN COUNTS II AND III**

Assuming, *arguendo*, that the jurisdictional defects could be cured, the Court must next consider Defendants' assertion that Plaintiff's ADA and NMHRA disability discrimination claims should be dismissed for failure to allege a disability as defined by the ADA and NMHRA. The ADA defines a disability as "A) a physical or mental impairment that substantially limits the individual in one or more of the major life activities, B) a record of such impairment, or C) being regarded as

having such an impairment." 42 U.S.C. §12112(a). The NMHRA uses the same language as subsection "A" above. *See* N.M. STAT. ANN. §28-1-2,7. "Major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 CFR §1630.2(1); N.M. STAT. ANN. §28-1-2; *see also Bolton v. Scrivner,* 36 F.3d 939, 942 (10th Cir. 1994) (holding that the EEOC's definition applies to ADA cases).

It is not clear what major life activity is limited by Plaintiff's alleged disability. In paragraph 48 of the Complaint Plaintiff asserts that she experiences "stress and anxiety attacks" when made to answer the phone. It seems most logical that Plaintiff is attempting to allege a limitation in the major life activity of "working," but Plaintiff's allegations fail to substantiate such a claim. In *Bolton*, the Tenth Circuit held that the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 36 F.3d at 942; *see also* 29 CFR 1630.2(j)(3). To substantiate a claim of a disability limiting the major life activity of working, Plaintiff must show that her condition "significantly restricts her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Bolton,* 36 F.3d at 942; *see also Sutton v. United Airlines, Inc.*, 1999 WL 407488, at *14 __ U.S. __, __(1999); *Young v. U.S. West Communications, Inc.,* 166 F.3d 1223, 1998 WL 849523 at *1 (10th Cir. 1998) (unpublished disposition).

Plaintiff has not claimed to be substantially limited in her ability to perform either a class of jobs or a broad range of jobs, she only claims to be limited in the performance of a single, particular job: namely, answering the telephone. In *Young* the Tenth Circuit upheld this Court's decision in a case with a similar disability fact pattern. 166 F.3d 1223, 1998 WL 849523 at *1. There, Young claimed to have a syndrome which restricted her ability to perform only a narrow range of jobs related

to keyboard operation. *See id.* at *1-*2. Such a restriction does not meet the standard of limitation in a class of jobs or a broad range of jobs; accordingly, this Court held that Young did not suffer from a disability as defined by the ADA. *See id.* In the instant case, Plaintiff has failed to allege a disability which would limit her ability to perform work in a materially distinguishable way from what Ms. Young asserted.

Plaintiff raises the argument that stress can be considered an impairment under the ADA, but the case to which she cites explains why such an approach carries no weight in this matter—stress and depression qualify as ADA impairments only if they result from a documented physiological or mental disorder, disorders defined by the EEOC as, once again, conditions that "substantially limit the individual in one of the major life activities." *See Paleologos v. Rehab Consultants, Inc.,* 990 F.Supp. 1460, 1464 (N.D. Ga. 1998); *see also* 29 CFR §1630.2(g), (h), and (i). Even if Plaintiff were able to present evidence proving all of her allegations, she would not have shown that she has a disability as defined by the ADA and the NMHRA. Accordingly, the Court will grant Defendants' motion to dismiss Counts II and III for failure to state a claim upon which relief can be granted. If Plaintiff can amend the complaint to assert a condition that meets the ADA definition of a disability, within the strictures of Rule 11, the Court will consider a motion to amend. The proposed Amended Complaint should accompany that motion.

### RETALIATION AND CONSTRUCTIVE DISMISSAL CLAIMS IN COUNT I

To make a *prima facie* claim of retaliation, a plaintiff must assert three factors: 1) plaintiff engaged in a protected activity, 2) there was an adverse employment action subsequent to or contemporaneous with the protected activity, and 3) a causal connection exists between the protected activity and the adverse employment action. *See Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986 (10th

Cir. 1996). "Protected activity" has been defined as "protected opposition to Title VII discrimination or participation in a Title VII proceeding." *See id.* at 985.

Defendants argue that Plaintiff has failed to make a *prima facie* case, asserting that the alleged adverse employment action took place before Plaintiff's protected activity and thus was not "subsequent to or contemporaneous with" said activity, nor could there be a causal connection between the two. (*See* Defs.' Mem. Supp. Mot. Dis. at 3.) Defendants assert that Plaintiff's activity was her filing of the EEOC charge on April 7, 1998, and that the adverse employment action was the "demotion" to the position of Administrative Secretary on April 2, 1998. (*See* Compl. ¶¶ 9, 38, 42.)

Plaintiff, however, argues that threatening to complain about Defendants' alleged behavior, beginning approximately in October of 1997, well before the demotion, was in fact the protected activity. (*See id.* ¶ 33.) This Court need not determine whether Plaintiff's threatening to complain in this case constituted "protected opposition to Title VII discrimination," *Berry,* 74 F.3d at 985, as Defendants' version of the adverse employment action fails to include important allegations. Plaintiff alleges that open hostility began to be directed toward her on April 15, after the April 7 filing of the first EEOC charge. (*See* Compl. ¶ 46.) Additionally, Plaintiff alleges that she was denied access to the file room and stripped of all her duties, save answering the phone, after the EEOC investigation took place. (*See id.* ¶ 47.) Whether this Court were to determine the protected activity to have taken place in October of 1997, or April 2, 1998, there are allegations of adverse employment actions subsequent to protected activity, which suffice to state a claim. Accordingly, Defendants' motion to dismiss the retaliation claim will be denied.

Defendants have also moved to dismiss Plaintiff's charge that the alleged retaliation resulted in constructive discharge. "Constructive discharge" occurs when working conditions are so difficult

that a reasonable person in the employee's position would feel compelled to resign. *See Woodward v. Whirlwind,* 977 F.2d 1392, 1401 (10th Cir. 1992). To determine whether a jury question exists as to the voluntariness of a Plaintiff's resignation, the Court must consider the totality of the circumstances under an objective standard. *See Yearous v. Niobara County Memorial Hospital,* 128 F.3d 1351, 1356 (10th Cir. 1997). The Court notes that Plaintiff does not claim that the alleged sexual harassment resulted in constructive discharge, but rather that the alleged retaliation led to constructive discharge.

Defendants assert that no reasonable person would feel compelled to resign because they were made to answer the telephone (*See* Defs.' Mem. Supp. Mot. Dis. at 4.) However, such argument ignores the open hostility and stripping of duties alleged in paragraphs forty-six and forty-seven of the Complaint. These allegations suffice to state a claim. Depending on the factual findings regarding the alleged hostility, it is possible that the "[w]orking conditions, when viewed objectively, [were] so difficult that a reasonable person would feel compelled to resign." *Yearous,* 128 F.3d at 1356. Accordingly, Defendants' motion to dismiss the constructive discharge claim will be denied.

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss (Docket No. 13), filed January 29, 1999, is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Plaintiff's claims in Counts II and III are dismissed for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted. The Court will consider a motion to amend the complaint to rectify both failures, if such an amendment can be made within the bounds of Rule 11.

**IT IS FINALLY ORDERED** that the Defendants' motion to dismiss the retaliation claim in Count I is **denied**.

_____
**UNITED STATES DISTRICT JUDGE**